

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-2000

# Hector v. Watt

Precedential or Non-Precedential:

Docket 00-3084

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Hector v. Watt" (2000). *2000 Decisions*. Paper 247.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/247

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 13, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3084

EUGENE HECTOR,

      Appellant

v.

GORDON J. WATT; ALBERTO DIAZ; RICHARD DAVY;
SCOTT HUNTER, in their individual and official capacities

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 97-cv-01410)
District Judge: Honorable William L. Standish

Argued October 5, 2000

Before: NYGAARD, GREENBERG and COWEN,
Circuit Judges

(Filed December 13, 2000)

      Michael L. Rosenfield, Esq. (Argued)
      1808 Law & Finance Building
      Pittsburgh, PA 15219

      John Stember, Esq.
      429 Forbes Avenue
      Allegheny Building
      Pittsburgh, PA 15219

      Counsel for Appellant

John G. Knorr, III, Esq.
Calvin R. Koons, Esq. (Argued)
Office of the Attorney General
 of Pennsylvania
Strawberry Square
15th Floor
Harrisburgh, PA 17120

Rodney M. Torbic, Esq.
Office of the Attorney General
 of Pennsylvania
564 Forbes Avenue
Manor Complex
Pittsburgh, PA 15219

   Counsel for Appellees

OPINION OF THE COURT

COWEN, Circuit Judge:

In previous criminal proceedings Eugene Hector successfully argued that several state troopers violated the Fourth Amendment when they seized over 80 pounds of hallucinogenic mushrooms from Hector's airplane in Dubois, Pennsylvania. Once the drugs were suppressed and the prosecution dismissed, Hector initiated this S 1983 action against the four appellants, Officers Gordon Watt, Alberto Diaz, Richard Davy, and Scott Hunter. The officers' request for qualified immunity has already been denied and the order affirmed. Hector v. Watt, 203 F.3d 817 (3d Cir. 1999) (unpublished table decision).

The narrow issue presented in this appeal is what type of damages Hector can obtain under the Fourth Amendment. Hector has abandoned any claim for damages from the search itself and instead seeks compensation solely for expenses he incurred during his criminal prosecution-- $3,500 in bail-bond expenses, $23,000 in attorney's fees, and $2,000 for travel between Pennsylvania and his home in California. The District Court held that Hector could not collect those litigation costs. We will affirm.

2

I

The Supreme Court has "repeatedly noted that 42 U.S.C. S 1983 creates a species of tort liability." Heck v. Humphrey, 512 U.S. 477, 483, 114 S.Ct. 2364, 2370 (1994) (quoting Memphis Community School Dist. v. Stachura, 477 U.S. 299, 305, 106 S.Ct. 2537, 2542 (1986) (internal quotation marks omitted)). Given this close relation betweenS 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, pr ovide[s] the appropriate starting point for inquiry under S 1983 as well." Heck, 512 U.S. at 483, 114 S.Ct. at 2370 (quoting Car ey v. Piphus, 435 U.S. 247, 257–58, 98 S.Ct. 1042, 1049 (1978)). The Supreme Court applied this rule in Heck to an inmate's S 1983 suit, which alleged that county pr osecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supr eme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious pr osecution provides the closest analogy . . . because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." Heck, 512 U.S. at 484, 114 S.Ct. at 2371. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff 's favor, and the inmate in Heck had not successfully challenged his criminal conviction. Id.

Although Hector is not seeking damages for imprisonment following a conviction, as in Heck , he is still seeking to recover costs incurred while defending against a prosecution, relief that the common law made available exclusively under malicious prosecution. As the Supreme Court has explained, false arrest or imprisonment, the only other cause of action under the common law that could apply to a wrongful arrest and its consequences, provides damages "up until issuance of process or arraignment, but not more." Id. (quoting W . Keeton, D. Dobbs, R. Keeton, &

3

D. Owen, Prosser and Keeton on the Law of T orts 888 (5th ed. 1984)).

Given the Supreme Court's mandate that we look to similar common-law causes of action, Hector appears to be on the horns of a dilemma. If his claim is categorized as being like false arrest, then his claim fails because false arrest does not permit damages incurr ed after an indictment, excluding all the damages he seeks. But if his claim is treated as resembling malicious prosecution, then he would face the problem that a plaintif f claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution."Even if the plaintiff in malicious prosecution can show that the defendant acted maliciously and without probable cause in instituting a prosecution, it is always open to the defendant to escape liability by showing in the malicious prosecution suit itself that the plaintiff was in fact guilty of the offense with which he was charged." Prosser and Keeton, supra, at 885 (citing Restatement of Torts S 657). This r equirement can bar recovery even when the plaintiff was acquitted in the prior criminal proceedings, for a verdict of not guilty only establishes that there was not proof beyond a reasonable doubt. Id.

Hector may believe, plausibly enough, that his claim is really more like a simple claim of tr espass. We agree that he has not in fact brought a claim for false arrest or malicious prosecution. And for that reason, we do not need to address the complexities of our jurisprudence on malicious prosecution under S 1983. Compare Torres v. McLaughlin, 163 F.3d 169 (3d Cir. 1998), cert. denied, ___ U.S. ___, 120 S.Ct. 797 (2000) (rejecting a claim for malicious prosecution under the Fourth Amendment), with Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998) (reversing dismissal of a claim for malicious prosecution under the Fourth Amendment and holding that r estrictions on a plaintiff 's liberty post-indictment constituted a seizure triggering Fourth Amendment rights). See also Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct. 807, 807 (1994) (rejecting claim for malicious prosecution based on substantive due process); Merkle v. Upper Dublin School Dist., 211 F.3d 782, 792-93 (3d Cir . 2000) (discussing

4

Albright's impact on S 1983 claims for malicious prosecution). Other cases have evaluated various restrictions on malicious prosecution under S 1983. See, e.g., Wilson v. Russo, 212 F .3d 781 (3d Cir. 2000); Montgomery v. De Simone, 159 F.3d 120 (3d Cir. 1998); Sherwood v. Mulvihill, 113 F.3d 396 (3d Cir. 1997); Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989).

If Hector's claim is treated like trespass, however, then he fails to identify any common-law authority appr oving of the damages he seeks. His difficulty in finding authority is easily explained, for the exclusionary rule was not part of the common law. Justice Story stated this point plainly: "In the ordinary administration of municipal law the right of using evidence does not depend, nor, as far as I have any recollection, has ever been supposed to depend upon the lawfulness or unlawfulness of the mode, by which it is obtained. . . . [T]he evidence is admissible on charges for the highest crimes, even though it may have been obtained by a trespass upon the person, or by other for cible and illegal means." United States v. La Jeune Eugenie, 26 F. Cas. 832, 843–44 (C.C.D. Mass. 1822). See also  Akhil Reed Amar, The Constitution and Criminal Pr ocedure 20–25 (1997) (reviewing historical evidence on the development of the exclusionary rule).

Pointedly, Amar's book adds that a "two-century tradition of civil damage actions in America" prohibited a plaintiff who was subjected to an illegal search fr om collecting damages for any prosecution, conviction, and incarceration resulting from the search. Id.  at 27. The plaintiff was limited to damages for the search itself. Id.

But analogies to the common law are not all that guide our decision. We do not venerate, for example, the common law rule that "upon marriage, the wife's identity merged with that of her husband. . . . plac[ing] the wife under a number of disabilities." Prosser and Keeton, supra, at 901. In Heck the Supreme Court said that the common law of torts was the starting point, not the only consideration, in analyzing a claim under S 1983. Thus, in justifying the result in Heck, the Court explained that allowing prisoners to challenge their convictions through S 1983 would undermine settled law of habeas corpus. Cf. Montgomery,

5

159 F.3d at 124 ("In determining whether a certain common law concept governs a section 1983 action, the [Supreme] Court has been guided by the extent to which the common law rule is rooted in history and r eason and whether the policies it serves are compatible with the purposes of section 1983."). Once we turn to these additional considerations, it is clear that Hector's claim must fail.

One pivotal consideration is that in Car ey the Supreme Court stated that the damages available under S 1983 depend on the type of constitutional right asserted:

> [T]he elements and prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right ar e not necessarily appropriate to compensate injuries caused by the deprivation of another. As we have said, these issues must be considered with refer ence to the nature of the interests protected by the particular constitutional right in question.

Carey, 435 U.S. at 264–65, 98 S.Ct. at 1053. When we reflect on the interests protected by the Fourth Amendment, we believe that it follows that a plaintiff cannot recover the litigation expenses incurr ed because police officers discovered criminal conduct during an unconstitutional search. As the Second Cir cuit has said in a case much like ours, "The evil of an unr easonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all." Townes v. City of New York, 176 F.3d 138, 148 (2d Cir. 1999). If Carey instructs that we should assess liability in terms of the risks that are constitutionally relevant, then damages for an unlawful search should not extend to post–indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns. W e agree with Townes: "Victims of unr easonable searches or seizures may recover damages directly related to the invasion of their privacy––including (where appropriate) damages for physical injury, property damage, injury to r eputation, etc.; but such victims cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." 176 F .3d at 148.

6

II

Our conclusion that Carey and Heck require the result we reach is supported by the Supreme Court's jurisprudence on the exclusionary rule. The Supr eme Court has made clear in many cases that the exclusionary rule is not "a personal constitutional right of the party aggrieved." United States v. Peltier, 422 U.S. 531, 538, 95 S.Ct. 2313, 2318 (1975) (quoting United States v. Calandra , 414 U.S. 338, 348, 94 S.Ct. 613, 620 (1974)). As a result, the Court has recognized many exceptions where the exclusionary rule does not apply.

Most recently, for example, the Supreme Court has said that the exclusionary rule does not apply to par ole revocation hearings. Pennsylvania Boar d of Probation and Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014 (1998). The Court has also refused to suppress evidence that police officers discovered when they were r easonably relying on a search warrant that was later held invalid, United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405 (1985); r efused to apply the exclusionary rule in a civil deportation hearing, I.N.S. v. Lopez–Mendoza, 468 U.S. 1032, 104 S.Ct. 3479 (1984); created a "public safety" exception to the timing of Miranda warnings, New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626 (1984); created an "inevitable discovery" exception to admit evidence that would have otherwise been excluded, Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501 (1984); allowed prosecutors to use during cross–examination evidence obtained in violation of the Fourth Amendment, United States v. Havens, 446 U.S. 620, 100 S.Ct. 1912 (1980); refused to exclude evidence obtained during an arrest pursuant to a statute later held unconstitutional, Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627 (1979); allowed the government to use in civil tax pr oceedings evidence seized in violation of the Fourth Amendment, United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021 (1976); rejected relief under habeas corpus for Fourth Amendment violations, Stone v. Powell, 428 U.S. 484, 96 S.Ct. 3037 (1976); rejected retroactive application of a Supreme Court opinion concerning warrantless searches of cars, even though the petitioner's appeal was pending when the decision was announced, United States v. Peltier , 422 U.S.

7

531, 95 S.Ct. 2313 (1975); held that a witness befor e a grand jury could not refuse to answer questions that were based on evidence obtained in violation of the Fourth Amendment, United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613 (1974); and allowed unlawfully seized evidence to be used to impeach the credibility of a defendant who testified in his defense, Walder v. United States, 347 U.S. 62, 74 S.Ct. 354 (1954). The list could go on.

We are not of course drawing into question whether the exclusionary rule was properly applied in Hector's criminal case. The issue we must resolve is whether Hector can continue to benefit from the exclusionary rule in his S 1983 suit and be relieved of defense costs fr om a prosecution that was terminated only because of the exclusionary rule.

In deciding whether we will recognized this"continued" application of the exclusionary rule in Hector's civil suit, we must evaluate what other interests will be af fected by such an extension of the rule. The Supreme Court invoked this broader perspective in Stone:

> The judgment in Walder revealed most clearly that the policies behind the exclusionary rule are not absolute. Rather, they must be evaluated in light of competing policies. In that case, the public interest in determination of truth at trial was deemed to outweigh the incremental contribution that might have been made to the protection of Fourth Amendment values by application of the rule.

Stone v. Powell, 428 U.S. at 488, 96 S.Ct. at 3049.

Many of the cases cited above, such as Stone, emphasize that the point of the exclusionary rule is to deter violations of the Fourth Amendment and then conclude that applying the exclusionary rule to the class of cases befor e the Court --habeas cases, for example--would not significantly increase the deterrent effect of the rule.

Under this logic, Hector can reasonably ar gue that imposing substantial financial liability on officers would add measurably to the deterrent effect of the exclusionary rule. And while the loss to the truth-seeking function of trials (the countervailing consideration often cited by the

8

Supreme Court) may be a persuasive reason for admitting evidence already discovered, the truth-seeking function of trials is a much less convincing reason for opposing greater deterrence of future constitutional violations. Once we agree that the police should adhere to the Fourth Amendment, we must accept that the police will for ego evidence that only would have been discovered through an unconstitutional search.

Despite these arguments supporting greater deterrence, Stone tells us that there are a variety of policy concerns to weigh. One policy concern in our case is that the magnitude of the liability that Hector's theory would impose would often have very little to do with the seriousness of the Fourth Amendment violation. What is often obscur ed by the Fourth Amendment's prominent role in criminal proceedings is that, as Townes suggested, we judge the gravity of Fourth Amendment violations not by the probative value of the evidence uncover ed, but by the degree of the privacy invasion.

For example, if police officers barged into someone's house without a warrant or probable cause, ransacked all the rooms, and on a whim shot the homeowner's dogs, that would be a very serious invasion of privacy, r egardless of whether evidence of criminal wrongdoing was unearthed. If on the other hand an officer who was conducting a lawful frisk of someone decided to open a small package, like a wallet, when there was insufficient justification for doing so, the officer's unconstitutional search would cause only a minimal intrusion of privacy, even if it uncover ed evidence of massive criminal wrongdoing, leading to pr otracted and expensive criminal prosecutions.

Under Hector's theory, however, the officer who took a frisk one modest step too far could face vast liability, liability that bears no relationship to the seriousness of the invasion of privacy. We recognize that tort law does not require that damages remain strictly proportional to fault; the famous eggshell-skull rule is an illustration. See, e.g., Jenson v. Eveleth Taconite Co, 130 F .3d 1287, 1294 (8th Cir. 1997); Avitia v. Metropolitan Club of Chicago, 49 F.3d 1219, 1227 (7th Cir. 1995). Another example is that a tortfeasor pays more in lost wages when the injured victim

has a higher income. And the Supreme Court has endorsed the rule that courts "should read [S 1983] against the background of tort liability that makes a man r esponsible for the natural consequences of his actions." Malley v. Briggs, 475 U.S. 335, 344-45 n.7, 106 S.Ct. 1092, 1098 n. 7 (1986) (quoting Monroe v. Pape, 365 U.S. 167, 197, 81 S.Ct. 473, 484 (1961)).

But these considerations are not decisive. As Heck emphasized, we are evaluating liability in a context where the common law would not allow damages for false arr est after an indictment and would prevent a plaintiff who was in fact guilty from obtaining relief for malicious prosecution. We are also considering liability that bears at best a tenuous connection to the interests pr otected by the Fourth Amendment. Because the caselaw makes clear that we should keep in mind the interests pr otected by the constitutional provision, and should weigh competing policies in designing remedies for Fourth Amendment violations, we think it is reasonable to r ecognize that the liability Hector seeks under S 1983 could often have little relation to the seriousness of the Fourth Amendment violation.

Our point is not that officers should be fr ee from liability for invasions of privacy, or even for comparatively minor ones. We are assuming here that a constitutional violation occurred and qualified immunity does not apply. The point is that given the social importance of police enfor cement, we think it is irresponsible to impose potential liability out of proportion to the errors committed. The resources any community has to devote to police protection ar e scarce, and Hector's way of calibrating liability would misallocate those limited resources by focusing on the wrong types of errors, while at the same time having the unfortunate consequence of reducing the cost of misconduct to criminals. To allow damages so out of pr oportion to the privacy invasion would not be consistent with the br oad principles animating qualified immunity. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982).

We also think it is significant that all of the scholarly authority that we have found runs against Hector's position. See Akhil Reed Amar, supra, at 27-29; Douglas

10

Laycock, Modern American Remedies: Cases and Materials 143 (2d ed. 1994); William J. Stuntz, W arrants and Fourth Amendment Remedies, 77 Va. L. Rev. 881, 900-01 (1991); John C. Jeffries, Jr., Damages for Constitutional Violations, 75 Va. L. Rev. 1461, 1474-76 (1989); Daniel J. Meltzer, Deterring Constitutional Violations by Law Enforcement Officials 88 Colum. L. Rev. 247, 270 (1988); Richard A. Posner, Rethinking the Fourth Amendment, 1981 Sup. Ct. Rev. 49, 50-53.

We recognize that a district court opinion in this circuit has held that a plaintiff who was convicted as a result of an illegal search could seek post-indictment damages for his conviction and incarceration solely on the basis of the illegal search. See Carter v. Georgevich, 78 F. Supp.2d 332 (D.N.J. 2000). But we do not find the reasoning of that case to be persuasive.

III

The officers have argued that proximate causation provides an alternative ground for affirming. More specifically, they claim that the prosecutor's and grand jury's decisions to indict Hector were super ceding or intervening causes that broke the causal connection between the Fourth Amendment violation and Hector's subsequent expenses in mounting a legal defense.

The officers are correct that we have applied the common law of proximate causation to S 1983 claims, see, e.g., Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000), and in particular that we have applied the concept of intervening causes to a S 1983 action for Fourth Amendment violations. See Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir. 1995).

In Bodine, for example, the plaintif f alleged that police officers illegally entered his house and used excessive force as they tried to arrest him. We held that the illegal entry did not make the officers automatically liable for any injuries caused by the arrest. Invoking pr oximate causation, we explained that if the officers' use of force was reasonable given the plaintiff 's acts, then despite the illegal entry, the plaintiff 's own conduct would be an intervening cause that limited the officers' liability. For the plaintiff to

11

recover all the damages he sought, we said that he had to prove two torts--one for the illegal entry and a second for excessive force.

While Bodine's insistence that the plaintif f must prove two torts bears some family resemblance to our conclusion that Hector cannot use the illegal search alone to obtain relief for what is in essence a claim for malicious prosecution, Bodine's superceding cause does not apply here. The officers are not alleging that any of Hector's conduct counts as an intervening cause; instead, they claim that the prosecutor's and grand jury's decisions to indict were the intervening cause.

The problem with the officers' theory is that there is a great deal of tension in the caselaw about when official conduct counts as an intervening cause. The Second Circuit has carefully described these tensions in a recent opinion, Zahrey v. Coffey, 221 F.3d 342, 349-55 (2d Cir. 2000), and observed that the most closely analogous Supreme Court decision rejected a pr oposed intervening cause. See Malley v. Briggs, 475 U.S. at 344-45 n.7, 106 S.Ct. at 1098 n.7. The plaintiff in Malley  had brought a S 1983 suit against a police officer for submitting insufficient evidence for a search warrant. In allowing the plaintiff 's suit to proceed, the Supr eme Court expressly stated that the judicial officer's decision to issue a warrant did not break the "causal chain between the application for the warrant and the improvident arrest." Malley v. Briggs, 475 U.S. at 344-45 n.7, 106 S.Ct. at 1098 n.7.

Not long after Malley, the Second Cir cuit rejected that a prosecutor or grand jury's decision was an intervening cause. See White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988) ("As with the grand jury . . . the public pr osecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false."). The Second Circuit has also held that a sentencing judge's decision did not break the causal chain between the wrongful recommendation of a probation officer and an unconstitutional sentence. Warner v. Orange County Dep't of Probation, 115 F.3d 1068, 1071 (2d Cir. 1997), reinstated

12

after opinion vacated, 173 F.3d 120, 121 (2d Cir.), cert. denied, ___ U.S. ___, 120 S.Ct. 495 (1999).

By contrast, in Townes the Second Cir cuit found that a judge's decision not to suppress evidence was an intervening cause, see 176 F.3d at 146-47, and the Fifth Circuit has held that the decisions of an FBI agent, prosecutor, and grand jury acted as an intervening cause. See Hand v. Gary, 838 F.2d 1420, 1427-28 (5th Cir. 1988). The Ninth Circuit has likewise invoked a pr osecutor's decision as an intervening cause. Smiddy v. V arney, 665 F.2d 261, 266-68 (9th Cir. 1981), adhered to, 803 F.2d 1469, 1471-72 (9th Cir. 1986). And Zahr ey listed many more cases, yielding few coherent principles.

As we recently observed, albeit not in the context of S 1983 actions, the Supreme Court "has repeatedly noted that `proximate cause is hardly a rigor ous analytic tool.' " Steamfitters Local, 420 v. Philip Morris, Inc., 171 F.3d 912, 922 (3d Cir. 1999) (quoting Blue Shield v. McCready, 457 U.S. 465, 477 n.13, 102 S.Ct. 2540, 2547 n. 13 (1982)). Given that the cases on intervening causes ar e legion and difficult to reconcile, as Zahrey  shows, and that we have other, sufficient grounds for r esolving this case, we will not reach the issue of intervening causation. W e have no reason to use this case as a vehicle for effectively deciding, for example, that a S 1983 plaintiff who was the victim of fabricated evidence can never sue for damages incurr ed after a prosecutor's decision to indict. W e leave such matters for another day.

IV

For the foregoing reasons, the District Court's judgment of January 25, 2000, will be affirmed.1

_____

1. After Hector abandoned all claims for damages from the stop itself, the officers requested in their motion for summary judgment that the District Court enter a one-dollar award in Hector's favor as nominal damages for the Fourth Amendment violation. W e need not address the propriety of that award, given Hector's abandonment of all compensable damages and given that the officers themselves sought the award and did not cross-appeal from it.

13

NYGAARD, Circuit Judge, concurring :

While I agree with the majority's conclusion that Hector cannot recover the expenses he incurred as a result of his criminal prosecution, I would reach this disposition more directly via a causation analysis.

I must first recount the relevant facts. Officers Watt, Diaz, Davy, and Scott unlawfully detained Hector , his companion, and his personal aircraft at the Dubois/Jefferson County airport for several hours without a warrant. The officers did, however, ultimately obtain a warrant from a magistrate and it was only after they secured this warrant that they searched Hector's aircraft and recovered eighty-one pounds of hallucinogenic mushrooms. Based exclusively on this seized contraband, Hector was charged in state court with possession with the intent to distribute the controlled substance. The charges were withdrawn in state court after a federal grand jury indictment, and Hector filed a motion to suppr ess the seized mushrooms based on the officers' violation of his Fourth Amendment right to be free from unr easonable searches and seizures. The District Court granted Hector's motion to suppress after a four day hearing, and the charges against Hector were withdrawn.

Hector commenced a civil rights action under 42 U.S.C. S 1983 to recover the expenses incurr ed pursuing his Fourth Amendment claim. The District Court granted summary judgment against the officers' attempts to shield themselves from Hector's claim with the doctrine of qualified immunity, and we affirmed. Hector v. Watt, No. 99-3355 (3d Cir. Nov. 3, 1999) (per curium). With the officers' liability for violating Hector's Fourth Amendment right established, and their entitlement to qualified immunity blocked, the S 1983 claim was r emanded to the District Court to determine damages. The District Court filed a one paragraph order granting the officers' motion for summary judgment and stating that "as a matter of law . . . the damages recoverable by plaintiff for defendant's violation of his civil rights under 42 U.S.C. S 1983 are limited to nominal damages of $1.00."

Individuals may bring civil claims for damages r esulting from violations of their Fourth Amendment rights under

14

S 1983. See Parkhurst v. Trapp, 77 F.3d 707 (3d Cir. 1996); Gillard v. Schmidt, 579 F.2d 825 (3d Cir. 1978). We have recognized that "Section 1983, Title 42 U.S.C.A., is completely silent as to the kind of damages which may be awarded an injured plaintiff in a civil right suit," Basista v. Weir, 340 F.2d 74, 85 (3d Cir . 1965), and the Supreme Court has held that S 1983 damages "may include . . . out-of-pocket loss and other monetary harms." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543 (1986). Actions brought under S 1983 are reviewed like common law tort claims and require a proximate cause analysis. See Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364 (1994); Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042 (1978); Olsen v. Correiro, 189 F.3d 52 (1st Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858 (2d Cir. 1997).

The dispositive question, therefore, is whether the officers' illegal search and seizure of Hector's aircraft proximately caused the expenses related to Hector's suppression hearing. The first stage of a causation analysis requires a finding that the violation caused the damages in fact, and I need not belabor this portion of the analysis since "but for" the officers' illegal sear ch Hector would not have been detained, searched, and prosecuted. Because the charges against Hector rested entir ely upon the illegally seized drugs, without the officers' violation of his Fourth Amendment rights none of the subsequent criminal proceedings would have occurred.

The issue of proximate cause, however, r equires closer analysis. Unlike causation in fact, proximate causation is a legal construct fashioned according to policy considerations. As Justice Andrews stated in his classic dissent in Palsgraf v. Long Island R.R., 162 N.E. 99, 103 (N.Y. 1928), "[w]hat we mean by the word `proximate' is that, because of . . . public policy . . . the law arbitrarily declines to trace a series of events beyond a certain point." The causal chain traced by a proximate cause analysis can be broken by an intervening or superceding cause, which Prosser and Keeton describe as "an act of a third person or other force which by its intervention pr events the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." RESTATEMENT (SECOND) OF TORTSS 440 (1965).

15

The majority eschews this issue, stating that "[g]iven that the cases on intervening causes are legion and difficult to reconcile . . . and that we have other, sufficient grounds for resolving this case, we will not reach the issue of intervening cause." Considering the facts befor e us, I find the causation analysis less daunting.

Three events might be considered to br each the chain of causation between the initial illegal detention (occurring before the issuance of the warrant) and the damages Hector subsequently incurred defending his Fourth Amendment rights and successfully suppressing the seized contraband: 1) the magistrate's issuance of a warrant; 2) the prosecutor's decision to pursue the char ge; and 3) the federal grand jury's indictment. Admittedly, the causation analysis would be difficult if we were to consider only the decision to prosecute and the grand jury indictment as possible intervening causes since parallel and contradictory jurisprudence has developed on this issue. Compare Townes v. City of New York, 176 F .3d 138, 147 (2d Cir. 1999) (stating that "[i]t is well settled that the chain of causation between a police officer's unlawful arr est and a subsequent conviction and incarceration is br oken by the intervening exercise of independent judgment"), Barts v. Joyner, 865 F.2d 1187, 1195 (11th Cir . 1989) (finding that intervening decisions of prosecutor, grand jury, judge, and jury supervene), Hand v. Gary, 838 F .2d 1420, 1427–28 (5th Cir. 1988) (finding that a decision of a magistrate or grand jury supervenes), Smiddy v. Var ney, 665 F.2d 261, 266–68 (9th Cir. 1981), Ames v. United States, 600 F.2d 183, 185 (8th Cir. 1979) (finding that a decision of a grand jury supervenes), and Duncan v. Nelson, 466 F.2d 939, 943 (7th Cir. 1972) (finding that a ruling of a sentencing judge supervenes), with Sherwin Manor Nursing Ctr ., Inc. v. McAuliffe, 37 F.3d 1216 (7th Cir . 1994), Hale v. Fish, 899 F.2d 390 (5th Cir. 1990), Boruda v. Richmond, 885 F.2d 1384 (9th Cir. 1989) (en banc) (stating that a "plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. S 1983 is entitled to recover compensatory damages for all injuries suffer ed as a consequence of those deprivations" and holding that the decision to prosecute the charge did not supervene), Kerr v. City of Chicago, 424 F.2d 1134, 1142 (7th Cir. 1970)

16

(stating that a "plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a . . . criminal action where the expenditure is a for eseeable result of the acts of the defendant."), Carter v. Geor gevich, 78 F.Supp.2d 332, 334 (D.N.J. 2000) (stating that "[r]ather than the acts of a prosecutor and judge being consider ed intervening causes which interrupted or destroyed the causal connection between the wrongful act and injury to the plaintiff, it appears to the Court that such subsequent acts were reasonably foreseeable by the officer. A tortfeasor is not relieved from liability for his wr ongful conduct by the intervention of third persons if these acts ar e reasonably foreseeable"), Schiller v. Strangis, 540 F.Supp. 605, 621 (D.Mass. 1982), Lykken v. Vavr eck, 366 F.Supp. 585 (D.Minn. 1973), Brooks v. Moss, 242 F .Supp. 531 (W.D.S.C. 1965), and McArthur v. Pennington, 253 F .Supp. 420 (E.D.Tenn. 1963). We need not r econcile this caselaw, however, because the magistrate issued a sear ch warrant before the officers recovered the contraband, and this act of independent judgment breaks the chain of causation between the illegal detention and Hector's subsequent legal costs.

As the majority recognized, the most dir ectly pertinent Supreme Court decision is Malley v. Briggs , 475 U.S. 335, 106 S.Ct. 1092 (1986). In Malley, the Court considered an officer's liability under S 1983 for pr esenting an insufficient affidavit to a judicial officer who issued a warrant resulting in the plaintiff 's arrest. The Court rejected the District Court's reasoning that the judicial officer's decision to issue the warrant, despite lacking necessary infor mation, broke the "causal chain between the application for the warrant and the improvident arrest." The Court stated that "a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause," and an "officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate." Id. at 345, 346 n.9. Three points should be taken from Malley.

First, a magistrate's issuance of a warrant, generally, does not necessarily insulate an officer fr om damages that occur as a result of illegal activity that takes place before

17

the receipt of the warrant. Second, the operative determination for the Court was whether the officer should have foreseen that his violation would pr oduce the damage to the plaintiff, and in Malley this question was specifically whether the officer should have known that his submission of the insufficient affidavit would result in the arrest. For the officers here, surely they could have foreseen that their violation (illegally detaining Hector) could r esult in the damages (legal fees).

Third, Malley is distinguishable fr om the facts here because the officer's violation in Malley pertained directly to the magistrate's inability to make an independent judgment regarding the warrant. The warrant in Malley was not the result of a truly independent decision by a magistrate, but rather was contaminated and compromised by the officer's misinformation. This requirement that a decision of a prosecutor, sentencer, or other court officials will only constitute an intervening cause if the decision is genuinely free from deception or coercion is enforced by several Courts of Appeal. See Townes, 176 F .3d at 147 (stating that an exercise of independent judgment breaks chain of causation "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment"); Myers v. County of Orange, 157 F.3d 66, 74 (2d Cir. 1998); Barts v. Joyner, 865 F.2d 1187, 1197 (11th Cir. 1989) (finding intervening acts break chain of causation "in the absence of a showing that the police officers deceived the court officials or unduly pressured them or that the court officials themselves acted with malice and the police joined with them."); Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir . 1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to dr op charges but to proceed to trial--none of these decisions will shield a police officer who deliberately supplied misleading infor mation that influenced that decision."); Lanier v. Sallas, 777 F.2d 321, 325 (5th Cir. 1985); Dellums v. Powell, 566 F.2d 167 (D.C. Cir. 1977), cert. denied, 438 U.S. 916 (1978). Although here the warrant arrived too late to excuse the initial detention, Hector has suffered no damages as a result of that detention. Otherwise, the independence of the

18

magistrate's judgment was not compromised in any way. Malley is therefore materially distinguishable.

The Fifth Circuit Court of Appeals offers two persuasive opinions holding that "if the facts supporting an arrest are put before an intermediate such as a magistrate or grand jury, the intermediate's decision breaks the causal chain," Rodriguez v. Ritchey, 556 F.2d 1185, 1193 (5th Cir. 1977) (en banc); Smith v. Gonzales, 670 F.2d 522 (5th Cir. 1982), and a third stating that "even an officer who acted with malice in procuring the warrant . . . will not be liable if the facts supporting the warrant or indictment ar e put before an impartial intermediary." Hand v. Gary, 838 F.2d 1420, 1427 (5th Cir. 1988). The Hand Court also emphasized, in accordance with Malley, that the chain of causation is only broken where all the facts are pr esented to the independent intermediary or where an officer's indiscretion does not cause any relevant information to be withheld from the independent intermediary. As Hand summarized, any "misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." Id. at 1428. Several district courts have followed these three Fifth Circuit opinions on this issue. See Johnson v. Davenport, 2000 WL 341255 (N.D. Tex. 2000); Paddio v. City of Hammond, 1997 WL 289704 (E.D. La. 1997); Hamrick v. City of Eustace, 732 F.Supp. 1390 (E.D.Tex.1990); Taylor v. City of Nederland, Tex., 685 F.Supp. 616 (E.D. Tex. 1988); V on Williams v. City of Bridge City, Tex., 588 F.Supp. 1187 (E.D. Tex. 1984); Farmer v. Lawson, 510 F.Supp. 91 (N.D. Ga. 1981).

There is nothing in the record to indicate, nor have the parties claimed, that the officers undermined the magistrate's independence of judgement and autonomous determination to issue the warrant. Absent any such subterfuge, and in conjunction with the decision of the prosecutor, the grand jury indictment, and the general policy concerns expressed in the majority opinion, I would find that the officers do not bear legal r esponsibility for the costs accrued after the initial illegal detention.

19

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

20