**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

TRACY WATSON; RENEE STALKER; PAM STALKER, as Guardian Ad Litem for O.S.; S.W.; and R.W.; minors,

<em>Plaintiffs-Appellants</em>,

v.

CITY OF SAN JOSE, San Jose Police Department; WILLIAM HOYT; CRAIG BLANK,

<em>Defendants-Appellees</em>.

</td>
<td>

No. 13-15019

D.C. No. 5:06-cv-04029-RMW

OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, Senior District Judge, Presiding

Argued and Submitted
February 13, 2015—San Francisco California

Filed September 8, 2015

Before: M. Margaret McKeown, William A. Fletcher, and Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

# SUMMARY[*]

## Civil Rights

The panel affirmed the district court's decision to grant a new jury trial on compensatory and punitive damages in an action brought pursuant to 42 U.S.C. § 1983 against two San Jose police officers after the officers took plaintiffs' minor children into protective custody without a warrant or court order.

The panel held that because the jury instructions in the first trial may have permitted the jury to improperly award damages for deprivations for which defendants were not responsible, the district court did not err by concluding that a new trial was warranted. The panel agreed with the district court that the $3 million in damages awarded by the first jury indicated that the jury improperly awarded damages for the fact of separation of the children from their parents after a juvenile court entered a removal order. The panel held that the juvenile court order meant that the separation of the family was inevitable and could not be attributed to the police officers, and plaintiffs did not refute that proposition. Therefore, even if the jury concluded that the separation prior to the court order was not justified, the amount awarded by the first jury did not reasonably reflect the actual injury suffered as a result of a separation of five or six days, given that the separation for the 17 months that followed was lawful and would have occurred anyway.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Peter Johnson (argued), Law Offices of Johnson & Johnson, Walnut Creek, California, for Plaintiffs-Appellants.

Clifford S. Greenberg (argued), Senior Deputy City Attorney, Nora Frimann, Assistant City Attorney, and Richard Doyle, City Attorney, San Jose City Attorney's Office, San Jose, California, for Defendants-Appellees.

Donnie R. Cox, Oceanside, California, for Amicus Curiae Pacific Justice Institute.

**OPINION**

CLIFTON, Circuit Judge:

Tracy Watson, Renee Stalker, and their three minor children appeal the district court's decision to grant a new jury trial on compensatory and punitive damages arising from their claims against San Jose police officers William Hoyt and Craig Blank. The officers took the children into protective custody without a warrant or court order, violating the constitutional rights of the family members. After the jury in the first trial awarded over $3 million in damages, the district court granted a new trial with respect to damages based on its inference that the jury may have impermissibly awarded damages for injuries that would have been suffered absent the constitutional violation. Plaintiffs argue that the district court abused its discretion by granting a new trial and that the initial award of damages should be reinstated. We conclude that the district court did not abuse its discretion in

ordering the new trial.  Accordingly, we affirm the judgment entered by the district court following the second trial.[1]

## I.  Background[2]

Plaintiffs Tracy Watson and Renee Stalker were married and had three children, who will be identified by their first initials: O (an eight-year-old girl), S (a three-year-old boy), and R (a one-year-old boy).  The children are also plaintiffs in this action, through their guardian ad litem Pam Stalker.

On May 26, 2005, a teacher at O's school contacted the Santa Clara County Department of Family and Children's Services (DFCS), alleging that O exhibited conduct raising suspicion that she suffered from sexual abuse.  DFCS assigned a social worker to the case, but the matter was not designated as urgent and the agency did not otherwise indicate that immediate removal of the children was warranted.  When the first social worker went on vacation, the case was assigned to a second social worker.  Approximately one month passed without either social worker meeting with the parents or visiting the family's

---

[1] As described below, the jury in the first trial found that the City of San Jose was not liable for the injuries suffered by Plaintiffs but that the two police officers were each individually liable. The district court granted a new trial but only as to the amount of damages, not as to the fact of liability for the violation of constitutional rights by Hoyt and Blank. The second trial proceeded from that point. Neither Plaintiffs nor Defendants challenge the liability verdicts.

[2] Because the case was tried before a jury, we state the facts and interpret the evidence in the light most favorable to the party that was successful at trial, in this case, the Plaintiffs. *See Bains LLC v. Arco Products Co.*, 405 F.3d 764, 766 (9th Cir. 2005).

home, despite several attempts to arrange a meeting. On June 27, the second social worker faxed a report of the allegations of sexual abuse and the failed attempts to connect with the parents to the San Jose Police Department.

On June 29, the Police Department assigned the case to Detective Hoyt. Hoyt's supervisor was Sergeant Blank, who briefly met with the social worker then assigned to O's case. That same day, Blank, Hoyt, and approximately five uniformed officers went to the family's house.[3] O was not at home, so Blank called Watson, leading to a disagreement between them over where the officers would interview O. Watson did not bring O to the house. In response, the officers removed S and R from the home, though they did not have a warrant authorizing them to do so.[4]

The next day, on June 30, O and her mother arrived at the police station, and the police officers interviewed O. Although O denied being abused by her father or anyone else, the police took custody of her as well. She was taken to a children's shelter.

The following day, on July 1, DFCS filed petitions with the juvenile court pursuant to California Welfare and Institutions Code § 300, which allows that court to declare that a child is a dependent of the court and to order removal

---

[3] The jury later concluded that Hoyt and Blank failed to conduct a reasonable investigation into the allegations of sexual abuse before deciding to visit the home. That verdict is not challenged on appeal.

[4] The jury concluded that the officers did not have exigent circumstances to remove the boys from the home, a conclusion that has not been challenged on appeal.

of the child from the custody of the parents if the child has suffered or has a substantial risk of suffering abuse. Defendants contend that the allegations contained in the petitions were the same allegations presented to the officers by DFCS.

Four days later, on July 5,[5] the juvenile court found that the "continuance of the children in the home of their parents is contrary to their welfare." Based on that order, the parents were deprived of custody and the children were held by the state beginning July 5, 2005 until they were returned to their parents 17 months later, in November of 2006.[6] Plaintiffs do not in this appeal dispute that the children were legitimately held by the state from July 5, 2005.

Plaintiffs filed a civil lawsuit in federal court under 42 U.S.C. § 1983, claiming injuries from the warrantless seizure of the children by the police officers. The case was tried by a jury in 2011. At that point, the only defendants remaining in the action were Hoyt, Blank, and the City of San Jose.[7] The jury found that Hoyt and Blank violated Plaintiffs'

---

[5] July 5, 2005 was a Tuesday. Because of the July 4 holiday, it was the first business day following the filing of the petitions with the juvenile court on Friday, July 1.

[6] After conducting additional evidentiary and custody hearings, the juvenile court determined that O had been sexually abused, and that S and R were in danger of abuse. The California Court of Appeal affirmed the juvenile court's orders.

[7] Many additional defendants were originally named in that action. By the time the case went to trial, the other defendants had either obtained judgments in their favor or had been dismissed following settlements of the claims against them.

constitutional rights but that the City was not liable for any violation. The constitutional rights in question were the right against unreasonable search and seizure under the Fourth Amendment and the right to due process under the Fourteenth Amendment.

The jury awarded a total of $1,250,000 in compensatory damages to the family after the first trial: O was awarded $400,000, S and R were each awarded $250,000, and Watson and Stalker were each awarded $175,000. The jury also collectively awarded Plaintiffs punitive damages in the amount of $1,500,000 from Blank and $500,000 from Hoyt. The total sum of damages awarded amounted to $3,250,000.

Defendants filed a motion for a new trial. The district court granted Defendants' motion. It reasoned that its jury instructions on damages in the first trial were not adequate, that "evidence and argument were allowed which resulted in inadequate guidance to the jury," and that the jury "apparently either misunderstood the instructions that were given or chose to ignore them."

A second trial was conducted in 2012. The issue of whether or not Defendants had violated Plaintiffs' constitutional rights had already been resolved in the first trial, so the second trial was limited to evidence regarding the damages suffered by the family as a result of the violation. Specifically, the jury in the second trial determined the issues of the amount of compensatory damages appropriate to remedy the violation, whether or not Defendants' conduct justified awarding punitive damages, and the amount of any punitive damages. Ultimately, the second jury awarded a total of $210,002 of compensatory damages to Plaintiffs: O and R were each awarded $1 in nominal damages, S was

awarded $10,000, and Watson and Stalker were each awarded $100,000. The jury in the second trial concluded that Hoyt and Blank were not liable for punitive damages.

## II. Discussion

### A. Compensatory Damages

Plaintiffs' main contention on appeal is that the district court erred by granting a new trial. We review the district court's grant of a new trial for abuse of discretion and will affirm if "any of its grounds for granting a new trial are reasonable." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 845–46 (9th Cir. 2014) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)). "Normally, we reverse under the abuse of discretion standard only when the district court reaches a result that is illogical, implausible, or without support in the inferences that may be drawn from the record." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010) (per curiam). We will affirm "a district court determination that falls within a broad range of permissible conclusions, provided the district court did not apply the law erroneously." *Id*.

Prior to the first trial, the district court, by its own description, "struggled . . . to formulate an appropriate jury instruction" that limited the damages recoverable by Plaintiffs to compensation for the injuries actually caused by the officers. The children were seized by Defendants on June 29 and June 30, but the juvenile court ruled just a few days later, on July 5, that the removal of the children from the home was necessary for their welfare. The state's custody of the children thereafter was not something for which Defendants

were legally responsible. In its first jury trial instructions regarding causation and damages, the district court attempted to describe limits on Defendants' responsibility, but it "overlooked" the decision of the Supreme Court in *Carey v. Piphus*, 435 U.S. 247 (1978).

In *Carey*, the plaintiffs were public school students who received lengthy suspensions without a hearing for alleged violations of school policies. 435 U.S. at 248–52. The lower courts determined that the students' procedural due process rights had been violated, and this determination was not at issue on appeal. *Id.* at 252. However, the Supreme Court noted that in cases where "a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." *Id.* at 263. In such cases, the Court held that a plaintiff must "convince the trier of fact that he actually suffered distress because of the denial of procedural due process itself." *Id.*

Of particular relevance here, in *Carey* the Supreme Court approved the Court of Appeals' holding that if the school defendants could prove that the students "would have been suspended even if a proper hearing had been held . . . then [the students] will not be entitled to recover damages to compensate them for injuries caused by the suspensions." *Id.* at 260 (internal citation omitted). The Court upheld the reasoning of the Court of Appeals that the failure to provide procedural due process could not be treated as causing the suspensions if the students would have been suspended anyway, so "an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to [the students]." *Id.*

As applied to this case, the officers could be held liable for damages suffered from their failure to obtain a warrant or court order, but Plaintiffs were required to prove that the injuries suffered stemmed from that failure, as distinguished from the later separation of the family based upon the juvenile court order. Injuries based on the separation of the family starting from June 29 and 30 could not be presumed because it was possible that, if the officers had applied for a warrant or court order, they would have been permitted to seize the children on those dates.

The district court had initially concluded that the officers could be liable for the separation experienced by the family during the time between the officers' removal of the children without a warrant and the juvenile court's July 5, 2005 order. Accordingly, the court in the first trial provided the following instruction on damages, in relevant part:

> You may award as compensatory damages, the amount of money that you determine will reasonably and fairly compensate the plaintiffs for any injury you find was caused by the unconstitutional acts of Sergeant Blank and Officer Hoyt on which you based your finding of liability. You should consider the mental and emotional pain and suffering experienced as a result of those acts. It is for you to determine what damages, if any, have been proved. However, the officers did not file the dependency petition with the Juvenile Dependency Court. It was filed by the Santa Clara County Department of Family and Children's Services. Damages may not be awarded against the officers for the actions

taken by the Department of Family and Child Services in connection with the petition and for the actions taken by the Juvenile Dependency Court which made an initial order on July 5, 2005, based upon the petition that the children were to be detained at the children's center pending further juvenile dependency court proceedings. The only relevance of the July 5, 2005, Order to the current damages proceeding before you is as to the light it sheds, if any, on whether emotional distress claimed by plaintiffs was suffered as a result of conduct on which you based your finding of liability or as a result of events for which the officers were not responsible.

After receiving the damages verdict awarding over $3 million to Plaintiffs, the district court determined that the amount of the award was excessive "beyond the realm of reasonableness." The court concluded that the $3 million award represented more than the damages caused by the failure to obtain a warrant or court order; the jury likely awarded damages based on its sympathies toward the children and the emotional distress arising from the separation of the family while the state investigated and resolved the allegations of sexual abuse. In support of its conclusion, the court noted that R, the one-year-old boy, had been awarded $250,000 in compensatory damages even though Plaintiffs did not introduce any evidence of R's distress from the

warrantless removal.[8]  The district court reasoned that the jury's failure to follow the principles of *Carey* stemmed from the court's jury instructions and evidentiary rulings that did not properly indicate that damages could only be awarded for the unconstitutional procedure.  It appeared to the district court from the amount of the award that "the jury apparently either misunderstood the instructions that were given or chose to ignore them."

In light of its concerns about the appropriateness of the damages award, the district court ordered a new trial.  The court concluded that the jury verdict that the officers had violated Plaintiffs' constitutional rights by removing the children without a warrant or exigent circumstances could stand, but that the damages portion had to be retried. Specifically, the amount of compensatory damages had to be redetermined, and both liability for and the amount of punitive damages would need to be retried because the jury might have punished the officers for distress they did not cause.

In the second trial, the district court modified its instructions to more clearly reflect the causation principles established in *Carey*.  The court explicitly instructed the jury that the officers violated Plaintiffs' constitutional rights by the specific act of failing to obtain a warrant or other court

---

[8] Although Plaintiffs on appeal argue that damages could be inferred based upon the age and vulnerability of the victims, damages must be supported by evidence, not merely inferences based upon characteristics of the victims. *See Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1118–19 (9th Cir. 2008) (holding that emotional damages cannot "be inferred *entirely* from circumstances, without any supporting testimony from witnesses"), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc).

order before taking the children.[9]  The court also explained the significance of the juvenile court order, stating that: "In light of the Juvenile Court order the Officers cannot be held responsible for any emotional distress caused by the separation of the children from their parents and the children's detention in protective custody." In addition, the district court instructed the jury in the second trial that it

---

[9] The relevant portions of the damages instruction from the second trial are as follows:

> You may award as compensatory damages the amount of money that you determine will reasonably and fairly compensate plaintiffs for any emotional distress or injury that you find was caused by the violation of plaintiff's [sic] Constitutional rights by Sergeant Blank and Officer Hoyt, specifically taking of the plaintiff children into custody without either a warrant authorizing them to do so or the existence of exigent, emergency, circumstances. You should consider the mental and emotional pain and suffering experienced by each of these plaintiffs as a result of the Constitutional violations. However, your damages shouldn't include any damages for emotional distress resulting from the separation of the children from their parents and the children's detention in protective custody. The Santa Clara County Department of Family and Child Services filed a petition with the Juvenile Court and the Juvenile Court ordered that the children were to remain in protective custody for their welfare pending further order of the Juvenile Court. In light of the Juvenile Court order the Officers cannot be held responsible for any emotional distress caused by the separation of the children from their parents and the children's detention in protective custody. However, the Juvenile Court order does not validate or retrospectively approve the constitutional violation including the manner in which the children were taken into protective custody.

could not speculate about events occurring after the juvenile court order entered on July 5, 2005 because those events were not relevant to the damages proceedings. After hearing the modified instructions, the jury in the second trial awarded the much smaller total of $210,002 in compensatory damages and no punitive damages.

The district court did not abuse its discretion by determining that the first set of jury instructions did not adequately convey the causation principles in *Carey*. As noted above, the Supreme Court held in *Carey* that compensatory damages may not be presumed from the violation of procedural due process. 435 U.S. at 263–64. An injury could result from either the violation of procedural due process itself, which is compensable, or from the underlying substantive loss, such as the school suspension in *Carey*, which would not be compensable if the loss was justified. *Id.* at 263. It was Plaintiffs' burden to "convince the trier of fact that [they] actually suffered distress because of the denial of procedural due process itself." *Id*.

In this case, we agree with the district court that the amounts of the damages awarded by the first jury indicated that the jury improperly awarded damages for the fact of separation of the children from their parents. The juvenile court entered its order stating that the removal of the children was necessary for their welfare on July 5, 2005, less than a week after the children were removed by Defendants. That order meant that the separation of the family was inevitable and could not be attributed to Defendants, and Plaintiffs did not refute that proposition. As a result, the emotional distress arising from the separation would have occurred regardless of the officers' conduct. Even if the jury concluded that the separation prior to July 5 was not justified, the amount

awarded by the first jury did not reasonably reflect the actual injury suffered as a result of a separation of five or six days, given that the separation for the 17 months that followed was lawful and would have occurred anyway.

Accordingly, the district court did not err by concluding that a new trial was warranted. The jury instructions in the first trial may have permitted the jury to improperly award damages for deprivations for which Defendants were not responsible.

We are not persuaded by Plaintiffs' arguments that *Carey* does not apply to the facts of this case. They argue that *Carey* was focused on claimed violations of procedural due process, while Fourth Amendment and substantive due process Fourteenth Amendment violations are claimed here. *Carey* primarily speaks to the concept of causation, however, and that principle applies to all of Plaintiffs' claims. Although *Carey* examined procedural due process claims in the context of school suspensions, both our court and other circuits have applied its causation analysis to other types of constitutional tort actions. *See e.g.*, *Coral Const. Co. v. King Cnty.*, 941 F.2d 910, 926 (9th Cir. 1991) (discussing *Carey* in the context of an equal protection claim); *see also Gomes v. Wood*, 451 F.3d 1122, 1132 (10th Cir. 2006) (holding that, under *Carey*, a family could only recover damages for the denial of procedural due process itself, but not for the separation of parents from their child because the family did not contest state judge's finding that removal was justified); *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2001) (analyzing Fourth Amendment claim under *Carey*). We see no principled reason why *Carey* would not apply here.

We are also not persuaded by Plaintiffs' argument that any error in the instructions given to the first jury was harmless. They assert that the damages awarded by the first jury were based entirely on what they describe as the egregious manner of the seizure of the children by Defendants and not from the separation of the family. The district court thought otherwise, and we agree that Plaintiffs' characterization seems unlikely. We afford deference to the district court's decision to grant a new trial, and the district court reasonably concluded that a new trial was appropriate here.[10]  Because the district court's conclusions were not "illogical, implausible, or without support in the inferences that may be drawn from the record," *Kode*, 596 F.3d at 612, we affirm the decision to grant a new trial on compensatory damages.

### B.  Punitive Damages

We also affirm the district court's order granting a new trial as to punitive damages. The court did not abuse its discretion by ordering a new trial with respect to liability because the punitive damages awards could have resulted from passion and prejudice of the jury connected to its misunderstanding of the injuries for which Defendants could properly be held responsible. *See Watec Co. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005) (district court may vacate a judgment and order a new trial if excessive damages could have

---

[10] We reject Plaintiffs' argument that the district court failed to provide notice or a hearing regarding a new trial on compensatory damages because the district court provided sufficient notice and opportunity to be heard regarding the application of *Carey* to all of Plaintiffs' damages awards in this case.

resulted from passion and prejudice).[11]  As discussed above, the court permissibly concluded that the jury awarded compensatory damages for emotional distress from the separation that was not caused by the police officers; the court could likewise infer that the jury improperly punished the officers for that same separation.  Because one of the factors used to examine the excessiveness of a punitive damages award is the amount of compensatory damages awarded, *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, 425 (2003), the district court did not abuse its discretion by concluding that a flawed compensatory damages award justified a retrial for punitive damages.  Moreover, we find no error in the district court's analysis that the officers' conduct, while reckless, did not rise to the level of reprehensibility that would justify the amount of punitive damages awarded in the first trial.[12]  *See Mendez*, 540 F.3d at 1120–21.

## III.    Conclusion

For the reasons stated above, we conclude that the district court did not abuse its discretion by granting a new trial.  We

---

[11] As stated in *Watec*, a district court has the discretion to vacate the judgment and order a new trial because of excessive damages even if there is no evidence that passion and prejudice affected the liability finding. 403 F.3d at 655. Although "remittitur is an appropriate method of reducing an excessive verdict," the district court was not required to use remittitur as opposed to granting a new trial.  *Id*.

[12] We reject Plaintiffs' argument that they did not have sufficient notice and opportunity to be heard regarding the grant of a new trial as to liability for punitive damages.  The issues of liability and excessiveness were raised in Defendants' motion for a new trial, and Plaintiffs had ample opportunity to argue that a new trial was not warranted.

affirm the judgment entered by the district court in favor of Plaintiffs awarding them a total of $210,002 in damages.

**AFFIRMED.**