RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0178p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KARIM CODRINGTON,

        *Plaintiff-Appellant*,

    *v.*

JAY DOLAK, TYLER BLISSETT, and JOHN KIRK, individually and in their official capacities as Police Officers of Louisville-Jefferson County Metro Government; STEVE CONRAD, individually and in his official capacity as Chief of Police for Louisville-Jefferson County Metro Government; LOUISVILLE-JEFFERSON COUNTY METRO GOVERNMENT,

        *Defendants-Appellees*.

No. 24-5831

───────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:21-cv-00665—Rebecca Grady Jennings, District Judge.

Argued: May 7, 2025

Decided and Filed: July 9, 2025

Before: BOGGS, GRIFFIN, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Paul Brzyski, KRAMER LEVIN NAFTALIS & FRANKEL, LLP, Washington, D.C., for Appellant. William H. Brammell, Jr., WICKER BRAMMELL PLLC, Louisville, Kentucky, for Appellees. **ON BRIEF:** Paul Brzyski, Daniel N. Lerman, KRAMER LEVIN NAFTALIS & FRANKEL, LLP, Washington, D.C., Shaun A. Wimberly, Sr., WIMBERLY & ASSOCIATES, PLLC, Louisville, Kentucky, for Appellant. Susan K. Rivera, JEFFERSON COUNTY, Louisville, Kentucky, for Appellees.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.

Plaintiff Karim Codrington was the victim of an unlawful traffic stop, search, and arrest. During the criminal proceedings arising from that stop, a Kentucky state court suppressed the evidence illegally seized from his vehicle and dismissed his criminal charges. More than three years later, Codrington filed this 42 U.S.C. § 1983 lawsuit, claiming that the defendant police officers planted drugs on him, provided those drugs to prosecutors as a basis for his criminal prosecution, and stole thousands of dollars from him. The district court granted summary judgment in favor of defendants on all claims, finding that Codrington's claims either were barred by the statute of limitations or failed on their merits. Because the district court erroneously found a lack of genuine dispute of material fact regarding Codrington's fabrication-of-evidence claim, we reverse on that claim. Consequently, we vacate the district court's derivative judgment in favor of defendants on Codrington's claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and remand for further proceedings. As for all other claims, we affirm.

I.

A.

In the early morning hours of August 10, 2018, Officers Jay Dolak and Tyler Blissett of the Louisville Metro Police Department (LMPD) observed Codrington in the driver's seat of a vehicle with dark tinted windows parked at an odd angle at a gas station. Suspecting criminal activity, Dolak approached the passenger window and scanned the inside of the vehicle with a flashlight. Dolak claims that he saw Codrington throw something inside the center console—an alleged "furtive movement"—but his body camera video shows no such motion.

Dolak asked Codrington if there were any guns in the vehicle and Codrington responded that he had one, which he lawfully possessed, in the back seat. Codrington then complied with

Dolak's request to step out of the vehicle.  Blissett, who was standing outside of the driver's side of the car, immediately patted down Codrington but did not find anything.

Throughout the stop, the officers asked for consent to search the vehicle, and each time, Codrington politely refused.  Despite no evidence of drug use, possession, or paraphernalia, at this point, Blissett requested a canine inspection.  While waiting for the canine officer, Dolak continued to use his flashlight to look inside the vehicle; he did not see anything illegal in plain view.  When LMPD K-9 Officer John Kirk and his drug-sniffing canine arrived, they performed the canine scan, and the dog allegedly alerted toward the front of the vehicle.  This alert, however, was not captured on the officers' body cameras.  Blissett then handcuffed Codrington.

After they handcuffed Codrington, the officers explained that they had probable cause to search the car without Codrington's consent based on his alleged furtive movement near the center console and the canine's alert at the front of the vehicle.  They asked Codrington where the illegal substances were located, and Codrington consistently denied possessing illegal drugs.

During their 23-minute search of the vehicle, the officers found a large amount of cash, "a little bit of weed," and a marijuana grinder—but nothing in the center console.  No one counted the money at the scene.  Though Codrington consistently denied having any illegal substances, Blissett searched him for drugs a second time, to no avail.  Nor did the officers' third search yield narcotics, although they did remove cash from Codrington's pockets that they previously noted during his initial pat down.  The officers completed a currency-seizure form, seized all the money, and transported Codrington to the LMPD booking facility.

Upon their arrival, Dolak removed Codrington from the back of his patrol car, searched the back seat, and allegedly found a small bag of methamphetamine on the seat where Codrington had been sitting.  Once again, body camera footage did not capture this discovery. Codrington insisted that the drugs were not his, but Dolak responded that the drugs were not there prior to Codrington's transportation.

While the officers booked Codrington into the jail, an officer took a photo that depicted—according to the officers—the items recovered from Codrington.  As expected, the photo showed Codrington's firearm, cash, grinder, and the small bag of marijuana that were all

recovered at the gas station, as shown on the body cameras.  But the photo also included some items that were indisputably not Codrington's (an additional handgun and two magazines) and two items (the bag of meth and a larger bag of marijuana) that Codrington insists were not his and the discovery of which the body cameras did not capture.  Nonetheless, Dolak provided the photo to the county prosecutor as evidence to charge Codrington.

### B.

A Kentucky grand jury ultimately charged Codrington with trafficking methamphetamine; trafficking marijuana while in the possession of a firearm; tampering with physical evidence; possessing illegal drug paraphernalia while in possession of a firearm; and loitering.  Codrington moved to suppress the evidence seized during the incident, arguing that the officers lacked reasonable suspicion for the stop in the first place and lacked probable cause to extend the stop and search the vehicle.  The Jefferson County Circuit Court agreed and granted the motion to suppress before ultimately dismissing the charges against him.

After the court ordered the return of all seized belongings, defendants returned just under $32,000 to Codrington.  Claiming that the officers had seized $50,000 in cash, Codrington moved to compel the return of the remaining funds.  The trial court determined that it no longer had jurisdiction and denied the motion.

### C.

Over three years after the incident, on November 3, 2021, Codrington filed this lawsuit against Officers Dolak, Blissett, and Kirk; former LMPD Chief Steve Conrad; and the Louisville-Jefferson County Metro Government.  He raised claims under 42 U.S.C. § 1983 for selective enforcement on account of race (he is African American), unlawful search and seizure of his person, false arrest/imprisonment, malicious prosecution, and fabrication of evidence; *Monell* claims; and several state-law claims.  The district court ultimately granted summary judgment in defendants' favor on all claims, finding that some were barred by the statute of limitations and that some failed on their merits.  After the district court denied Codrington's motion to alter or amend its judgment, he timely appealed the dismissal of all his federal claims as well as his state-law conversion claim.

II.

We review the district court's grant of summary judgment de novo. *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact, which is to say, there must be evidence on which the jury could reasonably find for the nonmovant." *Sumpter v. Wayne County*, 868 F.3d 473, 480 (6th Cir. 2017) (citation modified). We must view all evidence and draw all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

III.

We turn first to the timeliness of Codrington's unlawful-search-and-seizure, selective-enforcement, and false-arrest/imprisonment claims. To determine the statute of limitations for § 1983 claims, we look to state law. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Generally, the state's personal-injury statute of limitations applies to § 1983 claims. *See, e.g.*, *id.*; *Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009). Therefore, pursuant to Ky. Rev. Stat. § 413.140(1)(a), Codrington's § 1983 claims are governed by a one-year statute of limitations. *See Bonner*, 564 F.3d at 430–31; *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1031 (6th Cir. 2025). Because Codrington filed suit more than a year after these claims accrued, we affirm the district court's grant of summary judgment in favor of defendants on these three claims.

A.

*Unlawful Search and Seizure.* The "statute of limitations for filing an action alleging an unconstitutional search and seizure begins to run at the time of the injury—when the plaintiff knows or has reason to know about the occurrence of the unconstitutional search." *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394 (6th Cir. 1999), *abrogated on other grounds by Wallace*, 549 U.S. at 384; *see also Michel v. City of Akron*, 278 F. App'x 477, 480 (6th Cir. 2008).

Codrington's complaint challenges the unlawful search and seizure of his person, which occurred on August 10, 2018. To comply with the statute of limitations, Codrington needed to file this claim within one year. *See Shamaeizadeh*, 182 F.3d at 394. But he did not file his complaint until November 3, 2021, more than two years after the search. The district court therefore correctly held that defendants are entitled to summary judgment because Codrington failed to timely bring this claim. Indeed, Codrington conceded at oral argument that, with respect to the search and seizure of his person, this claim is time-barred.

To revive this claim, Codrington now asserts for the first time that his claim also covered the search and seizure of his *property*, which he argues did not accrue until December 2020, when defendants returned his vehicle to him and the "continuing trespass" of the vehicle thus ended. But because Codrington failed to raise this argument in district court—indeed, he failed to raise any argument about the unlawful-search-and-seizure claim's timeliness—he has forfeited this argument. *See, e.g.*, *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice." (citation modified)); *Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal."). And because this case is neither "exceptional," nor would our lack of review of this argument "produce a plain miscarriage of justice," we decline to excuse Codrington's forfeiture. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 445 (6th Cir. 2021) (citation modified). We therefore affirm the district court's grant of summary judgment in favor of defendants on this claim.

B.

*Selective Enforcement.* Similarly, Codrington's § 1983 selective-enforcement claim is time-barred. Though we have not explicitly established when the statute of limitations for this type of claim begins to run,[1] it is well settled that § 1983 claims accrue "when the plaintiff has a

---

[1]The parties agree that the district court erred in relying on a Third Circuit case that applied New Jersey's statute of limitations to a selective-enforcement claim. *See Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010). But that error does not change the district court's correct conclusion that Codrington's selective-enforcement claim

complete and present cause of action"; that is, "when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (citation modified). "To obtain relief, the plaintiff must be able to prove the elements of his claim." *Jordan v. Blount County*, 885 F.3d 413, 415 (6th Cir. 2018). A Fourteenth Amendment selective-enforcement claim requires: (1) a state actor singling out and prosecuting a person belonging to an identifiable group, even though the state actor has not done so in similar situations to people not belonging to that group; (2) the state actor initiating the prosecution with a discriminatory purpose; and (3) the prosecution having a discriminatory effect on the group to which the individual belongs. *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000). In situations where a selective-enforcement claim arises out of an allegedly race-based traffic stop and consequent arrest, the statute of limitations begins to run when formal legal process is initiated against the individual. *See Wallace*, 549 U.S. at 389–90. That is because, unlike malicious prosecution, completion of the prosecution is not an element of a selective-enforcement claim. *See id.*

The one-year statute of limitations for this claim therefore began to run when the Kentucky grand jury charged Codrington on February 12, 2019, based on evidence recovered during defendants' allegedly race-based traffic stop and arrest. *See id.* at 388; *see also* Ky. Rev. Stat. § 413.140(1)(a). Because Codrington did not bring his selective-enforcement claim for about another year and nine months, the district court correctly held that this claim is also untimely.

On appeal, Codrington argues that this claim could not have accrued until he was aware of, or at least had reason to know of, similar discriminatory treatment against others. Setting aside the above rule that selective-enforcement claims accrue when the prosecution begins, Codrington's claim was late even under his argument that his knowledge was required to start the statute-of-limitations clock. He claims that he was not aware of the selective enforcement against similarly situated individuals until April 30, 2021, when the Department of Justice announced it opened an investigation into LMPD's alleged racial animus in its policing practices. But Codrington's complaint is riddled with specific examples of asserted racist police behavior

---

is untimely. *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) ("We may affirm the district court's determination on any grounds, including grounds not relied upon by the district court." (citation modified)).

by LMPD officers from 2015–2020. For example, his complaint asserted that "[f]rom 2015, LMPD has had a custom of using traffic stops as a pretext for further investigations as a tool for officers to try and address crimes that have nothing to do with traffic violations." He further alleged that the fatal March 2020 shooting of Breonna Taylor made LMPD "famous . . . for treating African-Americans differently because of their race than whites who were in similar[] situations." Based on the news articles catalogued in Codrington's complaint, Codrington had at least "constructive knowledge" of the alleged racist practices of the LMPD, including race-based traffic stops, more than one year before he filed suit. *See Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000); *see also Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984) ("The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action."). Therefore, the statute of limitations also bars this claim.

C.

*False Arrest/Imprisonment.* A false-arrest-and-imprisonment claim brought under § 1983 accrues when the state initiates legal process against the plaintiff, such as through arraignment or formal charging. *See Wallace*, 549 U.S. at 389–90, 397. "Thereafter, unlawful detention" gives rise to "the 'entirely distinct' tort of malicious prosecution," so a continuation of that unlawful detention is irrelevant for purposes of determining when a false-arrest claim accrues. *See id.* at 389–90 (citation omitted). Once again, the one-year statute of limitations applies to this claim. *See* Ky. Rev. Stat. § 413.140(1)(a), (1)(c); *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

As explained above, Kentucky initiated legal process against Codrington, at the latest, on February 12, 2019, when a grand jury charged him with his alleged crimes. Yet Codrington did not file this lawsuit until November 2021, long after the one-year statute of limitations had run. Even though the district court did not grant summary judgment in favor of defendants on this claim based on the statute of limitations, "[w]e may affirm the district court's determination on any grounds, including grounds not relied upon by the district court." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (citation modified). And we need not consider the

merits of a claim that is plainly time-barred.  Therefore, we affirm the district court's grant of summary judgment in favor of defendants on this claim.

IV.

Codrington's § 1983 fabrication-of-evidence and malicious-prosecution claims, however, are not barred by the statute of limitations.**2**   Instead, the district court granted summary judgment in favor of defendants on these claims based on Codrington's failure to affirmatively show that the officers fabricated evidence against him—namely, by planting drugs.  As detailed below, although the district court appropriately granted summary judgment in favor of defendants on the malicious-prosecution claim, it erroneously did so on the fabrication-of-evidence claim.

A.

*Fabrication of Evidence.*  Because Codrington was never convicted of a crime based on the allegedly fabricated evidence but rather was arrested and charged with crimes based on such evidence, his § 1983 fabrication claim arises under the Fourth Amendment, not the Due Process Clause.  *See Clark v. Abdallah*, 131 F.4th 432, 447 (6th Cir. 2025) (comparing Fourth and Fourteenth Amendment fabrication-of-evidence claims); *see also Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).  To prevail on this claim, Codrington must show that defendants "fabricated evidence presented to a grand jury or to a judge determining probable cause." *See Clark*, 131 F.4th at 447.

Codrington has provided a litany of evidence suggesting that a "reasonable jury could return a verdict" in his favor on the fabrication-of-evidence claim.  *See Anderson*, 477 U.S. at 248.  From the outset, the traffic stop appears pretextual, and the officers' post-hoc justification for the stop—a "wellness check"—is nowhere in the record and was not recorded on the body-cam footage or documented in Dolak's report.  And throughout the stop, the body-cam footage failed to capture critical moments:  Codrington's alleged furtive movement to throw something

---

**2**The limitations periods for § 1983 fabrication-of-evidence and malicious-prosecution claims do not begin to run until the underlying criminal proceedings have concluded in the § 1983 plaintiff's favor.  *See McDonough v. Smith*, 588 U.S. 109, 114 (2019); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017).  Here, Codrington's filing of these claims was indisputably within one year of the state court's dismissal of his criminal charges.

in the center console, the canine's alleged alert on the vehicle, the alleged discovery of the larger bag of marijuana shown in the officers' photo, and Dolak's alleged discovery of the methamphetamine in the back seat of his patrol car. Notably, Kirk's body camera "did not work throughout the entire incident," and Blissett turned off his body camera about 45 minutes before they departed the gas station for the booking facility.

Next, consider the problematic evidence the officers provided in support of Codrington's charges. The officers admit that the photo they submitted to the prosecutor contained items—a handgun and two magazines—that did not belong to Codrington. And although Codrington admitted that the little baggie of marijuana came from his car, he testified that the bigger bag was not his. Contrary to Dolak's testimony—that he found the larger bag of marijuana in Codrington's backpack—the body-camera footage depicting the search of Codrington's person, vehicle, and backpack does not show any officer discovering the large bag of marijuana. Indeed, Dolak stated that Codrington had only "a little bit of weed." Other than the citation that Dolak wrote after the searches, which stated that he found "marijuana individually packaged for sale" in Codrington's vehicle, the record does not support the discovery of such evidence. Between the suspicious photograph and the citation containing unverified, disputed allegations, prosecutors may have charged Codrington based partly on fabricated evidence. At the very least, there is a question of fact as to what role the fabricated evidence played in the prosecutor's charging decision.

Moreover, throughout his criminal proceedings and this litigation, Codrington unequivocally denied possessing the methamphetamine found in Dolak's vehicle. *See Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 840 (6th Cir. 2021) ("[A]n 'unequivocal denial' that takes the form of admissible 'evidence' can create a genuine dispute of fact." (citation omitted)). He even suggested that Dolak test the baggie for his DNA, seemingly certain that his DNA was not on it. Indeed, the officers searched Codrington three times before putting him in the patrol car, yet they never found the bag of meth until Codrington allegedly dropped or dislodged it while sitting, handcuffed with his hands behind his back, in the patrol car—a scenario that strikes us as implausible.

Given this evidence, Codrington has demonstrated a genuine dispute of material fact as to whether the officers fabricated evidence and used that evidence to charge him with crimes. *See Davis v. Gallagher*, 951 F.3d 743, 745 (6th Cir. 2020) ("When there is evidence to support each version of the parties' dueling allegations, summary judgment is not appropriate—even when the evidence includes self-serving statements from the parties.").

Concluding the contrary, the district court relied on one fact in the officers' favor—that the body-cam footage never captured an officer planting drugs in Codrington's car nor in Dolak's cruiser. In fact, the district court lamented that "[a]lthough the police work here was dubious, there is no affirmative proof that the officers planted narcotics." But it is highly unlikely the officers would have recorded themselves manufacturing evidence, and a lack of such video footage does not mean the officers are automatically entitled to summary judgment on this claim. *Cf. Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002) (noting that circumstantial evidence of a claim is sufficient to survive summary judgment). At the summary-judgment stage, Codrington need not show "affirmative proof" or the smoking-gun evidence of fabrication that the district court required; rather, he must create a genuine dispute of material fact. And given the evidence detailed above viewed in the light most favorable to Codrington, he has done so.

To be sure, Codrington might not convince a jury that these officers planted drugs for the purpose of framing him of drug crimes. But that is Codrington's burden to prove, and given the unresolved factual questions, it is a question for a jury, not a court, to decide. *See Davis*, 951 F.3d at 749–50 (reversing the grant of summary judgment in favor of the defendant corrections officer where the parties asserted contradictory evidence about whether the defendant planted drugs on the plaintiff because "nothing in the record leads us to the conclusion that [the plaintiff's] claim that [the defendant] planted the drugs is demonstrably false or totally implausible"). Thus, we reverse the district court's grant of summary judgment in favor of defendants on Codrington's fabrication-of-evidence claim.

B.

*Malicious Prosecution.* Unlike the fabrication-of-evidence claim, which requires the act of using falsified evidence, malicious prosecution concerns prosecution without probable cause. This claim requires the § 1983 plaintiff to show that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff consequently suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceedings resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Codrington's malicious-prosecution claim turns on the probable-cause element. Putting aside the questions of fact regarding the allegedly fabricated evidence, the undisputed facts established probable cause for the officers to arrest and charge Codrington with possession of marijuana and possession of drug paraphernalia while possessing a firearm.

Preliminarily, the district court correctly concluded that the illegal search and seizure does not preclude us, in this § 1983 action, from considering the illegally obtained evidence. Although our circuit has yet to hold that the exclusionary rule and fruit-of-the-poisonous-tree doctrine do not apply in § 1983 cases, every other circuit to consider this issue has so held. *See Machado v. Weare Police Dep't*, 494 F. App'x 102, 106 (1st Cir. 2012) (per curiam); *Townes v. City of N.Y.*, 176 F.3d 138, 145–46 (2d Cir. 1999); *Hector v. Watt*, 235 F.3d 154, 157–58 (3d Cir. 2000); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (per curiam); *Martin v. Martinez*, 934 F.3d 594, 599 (7th Cir. 2019); *Klein v. Steinkamp*, 44 F.4th 1111, 1116 (8th Cir. 2022); *Lingo v. City of Salem*, 832 F.3d 953, 957–60 (9th Cir. 2016); *Shaw v. Schulte*, 36 F.4th 1006, 1017 (10th Cir. 2022); *Black v. Wigington*, 811 F.3d 1259, 1267–69 (11th Cir. 2016).

As our sister circuits have detailed, the exclusionary rule and fruit-of-the-poisonous-tree doctrine are judicially created remedies "designed to safeguard Fourth Amendment rights generally through [their] deterrent effect, rather than [establish] a personal constitutional right of the party aggrieved." *Townes*, 176 F.3d at 145 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). Thus, these doctrines are not constitutionally mandated, and courts should apply them only where their "deterrence benefits outweigh [their] substantial societal costs." *Lingo*, 832 F.3d at 958 (quoting *Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363 (1998)). For this reason, the exclusionary rule and fruit-of-the-poisonous tree doctrine apply

only in criminal matters, and the Supreme Court has specifically declined to extend them beyond that context. *See, e.g.*, *Townes*, 176 F.3d at 145–46; *Hector*, 235 F.3d at 158. We therefore join our sister circuits in holding that these doctrines do not apply in § 1983 cases.

Because the exclusionary rule does not forbid us from considering the indisputably non-fabricated evidence located in Codrington's vehicle, we can rely upon the small amount of marijuana, marijuana grinder, and legal firearm seized from the vehicle to determine whether defendants had probable cause to arrest Codrington. Plainly, they did. The use and possession of recreational marijuana in Kentucky is illegal, *see* Ky. Rev. Stat. § 218A.1422, *see also id.* § 218B.140 (legalizing only medical cannabis, not recreational), as is possessing drug paraphernalia with a firearm, *see id*. §§ 218A.500(2), 218A.992. Regardless of the subjective reason defendants detained and arrested Codrington, *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), they had probable cause to do so. Accordingly, the district court appropriately granted summary judgment in favor of defendants on Codrington's malicious-prosecution claim. *See Handy-Clay*, 695 F.3d at 538 (allowing us to affirm the district court's judgment on any grounds).

V.

In addition to his § 1983 claims against the individual officers, Codrington also brought two *Monell* claims against the Louisville-Jefferson County Metro Government for employing an unconstitutional custom or policy of race-based traffic stops and for failing to train officers on discriminatory conduct. Given that "*Monell* claims allow for municipal liability for the constitutional violations of their employees only where the municipality's policy or custom led to the violation," "there can be no liability under *Monell* without an underlying constitutional violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (citation modified). In other words, Codrington's *Monell*-related arguments on appeal rise and fall with the success of his § 1983 claims.

Because the district court found that all of Codrington's § 1983 claims failed and therefore no underlying constitutional violation occurred, it granted summary judgment in favor of defendants on the *Monell* claims without otherwise considering their merits. Given our

revival of the fabrication-of-evidence claim, we vacate the district court's *Monell* conclusions and remand for the district court to consider the merits in the first instance. *See Taylor v. City of Saginaw*, 11 F.4th 483, 489 (6th Cir. 2021) ("[W]e are a court of review, not first view." (citation modified)).

## VI.

Finally, the district court granted summary judgment in defendants' favor on all of Codrington's various state-law tort claims. Of those claims, Codrington appeals only the district court's merits-based dismissal of his conversion claim. We affirm the district court's judgment on this claim.

Codrington's conversion claim challenges defendants' alleged taking of about $18,000 of cash. He asserts that the officers seized $50,000 at the gas station but returned just under $32,000, unlawfully converting the remaining cash. Among other elements, a Kentucky conversion claim requires the plaintiff to show that he possessed the property at the time of the alleged conversion. *See C&H Mfg., LLC v. Harlan Cnty. Indus. Dev. Auth., Inc.*, 600 S.W.3d 740, 745 (Ky. Ct. App. 2020). The district court here held that Codrington failed to support the factual assertion that the officers seized $50,000, as opposed to a lesser amount, and thus granted summary judgment in defendants' favor.

We agree that Codrington failed to create a genuine dispute of material fact with respect to his possession of $50,000. In short, Codrington did not point the district court to anything in the record indicating that he had more cash at the time of his arrest than what was eventually returned to him. During the seizure, Codrington did not tell the officers he possessed $50,000 in cash—indeed, he vaguely claimed to have "over $10,000." When the officers seized the money, they ensured that they did so in Codrington's sight, explaining that they "don't count it"; rather, they secure the money in a plastic evidence bag and send it "straight to a bank" for counting and storage until any criminal charges against Codrington are resolved. And the officers' property and evidence voucher, dated the day of Codrington's arrest, lists $31,958 in cash as a seized item. Thus, the record evidence appears to contradict Codrington's claim that the officers seized $50,000 from him.

Though Codrington attempted to support his claim with his affidavit—which was part of the record in his criminal case and which he referenced to the district court—we need not accept the affidavit's unsupported, conclusory assertion that the officers seized $50,000 from him. *See Boykin*, 3 F.4th at 842. This mere "scintilla" of evidence is not enough to sustain Codrington's burden under Federal Rule of Civil Procedure 56. *See Anderson*, 477 U.S. at 252; *see also Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) (order) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment.").

True, Codrington's deposition testimony and his bank statements may have bolstered his version of the facts. But he filed these documents with the district court on a flash drive rather than as separate exhibits to a filing (with the bank statements further buried in electronic files relating to his criminal case). And he referenced neither in response to defendants' motion for summary judgment. In short, Codrington did not point the district court to this evidence buried in the record, yet he faults the district court for not taking the initiative to find a needle in the haystack of documents he submitted. Our caselaw demands the opposite. Codrington had the "affirmative duty to direct the court's attention to those specific portions of the record upon which [he sought] to rely to create a genuine issue of material fact." *Bormuth v. County of Jackson*, 870 F.3d 494, 499 (6th Cir. 2017) (en banc) (citation modfied). And because we "will not entertain . . . factual recitations not presented to the district court," *id.* at 500 (citation modified), Codrington's reference on appeal to a flash drive of exhibits not cited to the district court is too little too late, *see United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

We therefore affirm the district court's grant of summary judgment in favor of the officers on the conversion claim.

## VII.

For these reasons, we affirm the district court's grant of summary judgment in favor of defendants on Codrington's unlawful-search-and-seizure, selective-enforcement, false-

arrest/imprisonment, malicious-prosecution, and state-law conversion claims; reverse the district court's grant of summary judgment in favor of defendants on Codrington's fabrication-of-evidence claim; vacate the district court's grant of summary judgment in favor of defendants on Codrington's *Monell* claims; and remand for further proceedings.