NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0277n.06

Case No. 25-3925

**FILED**
Jun 29, 2026
KELLY L. STEPHENS, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JOHN STAFFORD, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| SUGARCREEK TOWNSHIP, OHIO; | ) | |
| SUGARCREEK TOWNSHIP POLICE | ) | |
| DEPARTMENT; CHIEF MICHAEL A. | ) | |
| BROWN; OFFICER ADAM KLARK; | ) | OPINION |
| OFFICER MARK D. WHITE; DETECTIVE | ) | |
| LESLIE STAYER; WHIO-TV, aka Miami | ) | |
| Valley Broadcasting Corporation; JAMES | ) | |
| BROWN; SUGAR VALLEY COUNTRY | ) | |
| CLUB/GOLF CLUB; JAMES KEYES, | ) | |
| Defendants-Appellants. | ) | |

Before: BATCHELDER, MOORE, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. During an altercation, John Stafford pulled a gun on a group of golfers playing on the course behind his property. Stafford was arrested and charged with aggravated menacing, but a special prosecutor later dismissed the charges. Stafford sued the arresting officers, several municipal officials, and a media outlet, alleging they violated his constitutional rights. Because probable cause supported Stafford's arrest and his other constitutional claims fail, we affirm the district court's grant of summary judgment to the defendants.

I.

John Stafford lived along the fifth hole of the Sugar Valley Golf Course. His property's septic system included a leach field, which is an underground network of pipes used to drain treated wastewater. That leach field extended from behind his residence to underneath the fifth hole's fairway. A previous owner had granted the golf course permanent permission to use the leach field's surface as part of the course.

But that arrangement resulted in occasional conflict between Stafford and Sugar Valley. Namely, Stafford worried that golfers would damage the leach lines when they drove golf carts on the fairway instead of the cart path. He "repeatedly reported" seeing golfers drive carts over his leach field, so Sugar Valley added signs warning that carts must stay on the cart path. R. 30, Pg. ID 246. Unfortunately, the signs didn't always deter golfers from straying onto the fairway.

On one such occasion, a rowdy group of golfers arrived at the fifth hole while Stafford was walking his dog in his backyard. He could hear the golfers talking loudly from his yard and saw them "rac[ing]" their carts on the fairway. R. 164, Pg. ID 1171–72. Chasing an errant ball, one golfer drove his cart out of the golf course into Stafford's neighbor's yard and began driving in circles to retrieve it. Stafford angrily reminded the group that they weren't allowed to drive carts on the fairway or into his neighbor's yard, and they responded with some profanities. He kept walking his dog around the yard; the golfers kept playing the fifth. But as Stafford turned towards his house and the golfers completed their putts, the altercation reignited.

The golfers began yelling and cursing at Stafford from the green. One golfer, Steve Clark, shouted at Stafford, "I'll kill you and your dog," while another added, "[C]rack that dog in the f***ing skull." *Id.* at 1174. Clark's companions tried to hold him back, and one cautioned him that Stafford had a dog and "may have a gun." *Id.* at 1175. Stafford warned, "[Y]ou'd better listen

to them." *Id.* But Clark left the green and walked toward Stafford anyway, allegedly wielding his golf club raised above his head. Based on the golfers' belligerent behavior, Stafford "believed they were going to kill [him]." *Id.* at 1176. So when Clark was about six feet away from him, Stafford pulled out a handgun and pointed it at Clark. He told Clark and the other golfers, "[Y]ou're not going to f\*\*\* anybody up." *Id.* at 1177. Clark stopped approaching. Amidst the commotion, one of the golfers and a neighbor called 911.

Officer Adam Klark and Sergeant Mark White responded to the scene based on a report that a man was pointing a gun at golfers. Klark met Stafford in the driveway of his home. He briefly discussed the incident with Stafford but didn't arrest him at that time. Then, the two officers interviewed the golfers and other witnesses near Stafford's home. One of the golfers also showed the officers a video of the aftermath of the altercation. Klark didn't think any of the golfers were swinging golf clubs near Stafford.

Around that time, White called Sugarcreek Township's Chief of Police to discuss the incident. During that call, the chief told him, "Go ahead and press charges. We've been screwing with him forever," seemingly referring to Stafford's prior run-ins with police due to his political activism. R. 170, Pg. ID 2565–66. But the chief didn't order the officers to arrest Stafford.

Based on their investigation, White and Klark decided to arrest Stafford for aggravated menacing and transported him to the Sugarcreek Township Police Department in Klark's cruiser. When they arrived, Klark drove into the sally port, which is a secure entrance where officers typically bring arrestees into the station for processing. But Klark then noticed WHIO-TV anchorman James Brown in the back of the sally-port area looking to film Stafford's arrival. So instead, Klark exited the sally port and drove around to the fire department bay on the other side of the building. Officers escorted Stafford into the police station through the fire department

entrance, hoping to "keep him out of the camera view." *Id.* at 2490. However, Brown was still able to capture some footage of Stafford's entrance using his cell phone. WHIO broadcast that footage in a report about Stafford's arrest later that evening.

After arriving at the station, officers fingerprinted Stafford, provided him with a copy of his citation, and then released him. The case was referred to a prosecutor in the nearby town of Xenia. Just three days after the incident, that prosecutor filed one aggravated-menacing charge against Stafford. A couple of weeks later, the case was referred to a special prosecutor, who ultimately dismissed the criminal complaint with prejudice.

Stafford then sued Sugarcreek Township and four of its police officers (Police Defendants) for unreasonable seizure, intrusion into privacy, malicious prosecution, failure to investigate, failure to train, and civil conspiracy. *See* 42 U.S.C. § 1983. He also sued Brown and WHIO-TV (WHIO Defendants) for civil conspiracy, unreasonable seizure, and intrusion into privacy. Finally, he included Sugar Valley Golf Course and its owner in his federal civil-conspiracy claim. Stafford also brought a variety of state-law claims against all three groups of defendants. The district court granted summary judgment to the defendants on all Stafford's federal claims and dismissed the state-law claims without prejudice. Stafford timely appealed.

## II.

We review the district court's grant of summary judgment de novo. Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we view all evidence in the light most favorable to Stafford, the nonmoving party.

There was probable cause to arrest Stafford for aggravated menacing, which defeats his claims of unreasonable seizure and malicious prosecution. And our precedent doesn't support

Stafford's federal claim for intrusion into privacy. Because Stafford can't show an underlying constitutional violation, his *Monell* and civil-conspiracy claims also fail. With no surviving federal claims, the district court properly dismissed his state-law claims without prejudice.

A.

First, Stafford alleges that the Police and WHIO Defendants unreasonably seized him by arresting him without a warrant.[1] *See* U.S. Const. amend. IV. If the officers had probable cause to believe Stafford committed aggravated menacing before arresting him, that claim fails. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Because there was probable cause for Stafford's arrest, the district court correctly granted summary judgment to defendants on that claim.

Probable cause to arrest a suspect is a "low bar." *Frenchko v. Monroe*, 160 F.4th 784, 796 (6th Cir. 2025). We assess probable cause by asking whether the events leading to the arrest would cause an objectively reasonable officer to identify a "probability or substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (quotation omitted). That determination typically depends on the elements of the underlying state-law charges. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

Here, Stafford was arrested under Ohio's aggravated-menacing statute, which prohibits "knowingly caus[ing] another to believe that the offender will cause serious physical harm to the person or property of the other person" or his family. Ohio Rev. Code § 2903.21(A). Even "briefly" brandishing a gun or aiming it at someone can provide probable cause for an aggravated-menacing arrest. *Crable v. City of Cleveland*, No. 24-3316, 2024 WL 5656461, at *3 (6th Cir.

---

[1] Section 1983 permits claims against only those defendants "act[ing] under color of state law." *Rudd v. City of Norton Shores*, 977 F.3d 503, 512 (6th Cir. 2020). Typically, that would mean Stafford couldn't bring a § 1983 claim against the WHIO Defendants. But if the WHIO Defendants engaged in a conspiracy with government officials to deprive Stafford of his constitutional rights—as he alleges here—that could establish the WHIO Defendants acted under color of state law. *Id.* at 517; *see infra*. Because no violation occurred, we don't need to decide whether the WHIO Defendants engaged in state action here.

Dec. 19, 2024) (order). Because those elements were present here, the officers had probable cause at the time of the arrest to believe Stafford had committed the crime of aggravated menacing.

The officers decided to arrest Stafford based on witness statements indicating he had placed the golfers in fear of serious physical harm and video evidence corroborating their account. When the officers arrived at the golf course, two uninvolved bystanders told them that Stafford had "pulled a gun" and pointed it at the group of golfers, with lots of "swearing and threatening back and forth." R. 170-4, Pg. ID 2739. What's more, Stafford himself informed the officers that he had brandished his gun at the golfers and told them to get off his property. Finally, after speaking with Stafford, the officers took written statements from the golfers involved in the altercation. All four golfers reported that Stafford pulled a gun on the group. Plus, three of the golfers reported that Stafford threatened to kill them all and that they feared for their lives.

The golfers also took videos of the incident and showed one to the officers at the scene. The video didn't show Stafford pulling the gun (because it started after the incident). But the officers believed that it undermined Stafford's story and self-defense claim. And they thought the video showed the golfers standing on the fairway, so they determined the incident likely happened in that location.

We've previously found probable cause for an arrest under Ohio's aggravated-menacing statute when four witnesses reported that a suspect pointed a gun at them and the suspect stated he wanted to scare them off. *Manuel v. City of Columbus*, 86 F. App'x 852, 854–55 (6th Cir. 2004). After similar reports here, the officers believed they "had enough based upon the law to meet the elements of the law." R. 170, Pg. ID 2575. In fact, they had even more cause here. Unlike Manuel, Stafford admitted that he pointed his gun at the golfers. *Manuel*, 86 F. App'x at 855. Thus, under our precedent, the officers had enough evidence to meet the low bar for probable cause.

In response, Stafford argues that the officers ignored exculpatory evidence that his actions were lawful self-defense under Ohio's "Stand Your Ground" law. *See* Ohio Rev. Code § 2901.09. It's true that officers must evaluate the totality of the circumstances to determine probable cause, including "both inculpatory and exculpatory evidence." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 282 (6th Cir. 2020). But that obligation doesn't mean officers "must investigate a defendant's legal defenses prior to making an arrest." *Fridley v. Horrighs*, 291 F.3d 867, 874 (6th Cir. 2002). Instead, "[e]ven if the circumstances suggest that a suspect may have an affirmative defense," an officer may still make an arrest (supported by probable cause) unless a reasonable officer would "conclusively know" the defense applies. *Id.* at 873. Based on what the officers knew when they arrested him, Stafford's case for self-defense was far from clear-cut.

For starters, Ohio's Stand Your Ground law covers only the use of *defensive* force. Ohio Rev. Code § 2901.09(B). And the officers didn't "conclusively know" whether Stafford was acting defensively when they arrested him. *Fridley*, 291 F.3d at 873. Stafford alleged that Clark approached him wielding "a golf club raised in his hand over his head threatening to strike" him. Appellant's Br. at 4. But the officers didn't have to believe Stafford's story. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988). In fact, one of the first witnesses the officers encountered had described Clark as "empty handed" at the time of the incident. R. 170-4, Pg. ID 2739, 2753. And one of the golfers said Stafford "tried to start a fight" with his group. *Id.* at 2748. Faced with contradictory stories, the officers couldn't conclusively know whether the Stand Your Ground law protected Stafford's conduct.

The location of the incident adds another layer of uncertainty. Ohio's Stand Your Ground law applies to the use of force by someone in a place where he has a legal right to be. Ohio Rev. Code § 2901.09(B). Of course, if the altercation occurred on Stafford's property, his presence

would clearly be lawful. But that wasn't obvious to officers at the time. They had just seen a video of the incident that showed Stafford and the golfers arguing on the fairway. And Stafford was walking his dog—suggesting that he wasn't there to golf. So the officers couldn't have "conclusively" known that Stafford had any legal right to be there. All told, Stafford's self-defense argument wasn't so obvious that it defeated probable cause.

Stafford emphasizes that Ohio's amended Stand Your Ground provision is no longer an affirmative defense, but rather something the government must disprove at trial.[2] That doesn't change our conclusion. The burden for a conviction is different from the burden for an arrest. Probable cause doesn't require officers to be certain that every element of an offense is present at the moment of arrest. *United States v. Baker*, 976 F.3d 636, 648–49 (6th Cir. 2020). After all, requiring such certainty would hamstring law enforcement's ability to make warrantless arrests of dangerous suspects anytime they asserted self-defense. That's why a suspect's "purported legal excuse for his actions" should generally "be assessed by prosecutors and judges, not policemen." *Painter v. Robertson*, 185 F.3d 557, 571 n.21 (6th Cir. 1999). So even if convicting Stafford would require prosecutors to prove he wasn't acting in self-defense, officers didn't need to know whether they could prove that in order to arrest him.

In short, Stafford's unreasonable-seizure claim fails because the officers had probable cause to arrest him.

---

[2] One of our sister circuits has noted that state laws like Ohio's could operate such that "the absence of [self-defense] became an element of every violent crime in which self-defense is claimed." *Davis v. City of Apopka*, 78 F.4th 1326, 1340 (11th Cir. 2023). *But see Engle v. Isaac*, 456 U.S. 107, 120 (1982). Our precedent, however, doesn't suggest that whenever a state requires the prosecution to prove a circumstance beyond a reasonable doubt, it has invariably defined that circumstance as an element of the crime. *See Engle*, 456 U.S. at 120. A state may assume the burden of disproving an affirmative defense without also designating the absence of that defense an element of the crime.

B.

Next, Stafford alleges the Police Defendants maliciously prosecuted him. A malicious-prosecution claim requires a plaintiff to show that "(1) the defendant made, influenced, or participated in the decision to prosecute; (2) the government lacked probable cause; (3) the proceeding caused the plaintiff to suffer a deprivation of liberty; and (4) the prosecution ended in the plaintiff's favor." *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (cleaned up). Stafford fails at the first hurdle.

The Police Defendants didn't influence the Xenia prosecutor's independent decision to charge Stafford with aggravated menacing. That's because "[a] prosecutor's independent charging decision typically breaks the causal chain for malicious-prosecution purposes" unless an officer makes false statements or engages in other "misconduct" that would foreseeably result in charges. *Novak v. City of Parma*, 33 F.4th 296, 307 (6th Cir. 2022). While Stafford may disagree with the officers' account of the incident, he can't identify any evidence that any of the officers lied or misrepresented facts in the underlying documents. And the officers didn't do anything else to influence the decision to prosecute Stafford. In fact, White never even talked to the prosecutor who filed charges. Klark simply compiled the citation and materials from the case and sent it to a supervisor, who transmitted it to the court and prosecutor. The charges that were eventually "sent up" were "out of [Klark's] control." R. 167, Pg. ID 1880. So the Xenia prosecutor's independent charging decision broke the causal chain from the officers to Stafford's prosecution. Because the defendants didn't participate in or improperly influence the charging decision, Stafford's malicious-prosecution claim also fails.

C.

Stafford next claims that the Police and WHIO Defendants violated the Fourth Amendment by intruding into his privacy with a "staged perp walk." Appellant's Br. at 19. He relies on a single out-of-circuit case holding that a perp walk staged for media engagement that "lacked any legitimate law enforcement purpose" violated the Fourth Amendment. *Lauro v. Charles*, 219 F.3d 202, 213 (2d Cir. 2000). *Lauro* is neither binding nor applicable. This court has never recognized a claim based on the intangible privacy interests recognized in *Lauro*. And by its own terms, *Lauro* didn't address cases "where a suspect is photographed in the normal course of" police transport. *Id.* at 213. But that's exactly what happened here. In fact, the officer transporting Stafford testified that when he saw a WHIO reporter in the sally port, he walked Stafford through an alternative entrance to "keep him out of the spotlight." R. 167, Pg. ID 1768. So any claim related to the perp walk fails, too.

D.

Because Stafford hasn't established a constitutional violation, the rest of his federal claims also fail. And with no surviving federal claims, the district court properly dismissed his state-law claims.

First, Stafford argues that the Police and WHIO Defendants engaged in a civil conspiracy to deprive him of his constitutional rights through the arrest and perp walk. A civil-conspiracy claim under § 1983 requires an underlying constitutional violation. *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 872 (6th Cir. 2024); *see also PB&J Towing Serv. I & II, LLC v. Hines*, No. 20-6170, 2022 WL 390599, at *5 (6th Cir. Feb. 9, 2022). But there was no constitutional violation here, so Stafford's civil-conspiracy claim fails.

Stafford also seeks to hold Sugarcreek Township and its police chief liable for failing to investigate his defenses and failing to train officers on Ohio's Stand Your Ground law. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But a city can't be liable under *Monell* without an underlying constitutional violation. *Codrington v. Dolak*, 142 F.4th 884, 896 (6th Cir. 2025). Because Stafford's underlying constitutional claims fail on the merits, so do his *Monell* claims.

Finally, Stafford asks us to revive his state-law claims, which the district court dismissed without prejudice. Once the district court had dismissed Stafford's federal claims, it could properly decline to exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. § 1367(c)(3). And Stafford makes no effort to argue that the district court abused its discretion in doing just that. *See Hester v. Chester County*, 162 F.4th 780, 790 (6th Cir. 2025). Because state courts should address those claims in the first instance, we affirm the district court's dismissal of Stafford's state-law claims without prejudice.

*    *    *

We affirm.